UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| TROY ANTHONY PESINA, | ) | NO.  CV-10-441-JPH |
| Plaintiff, | ) | |
| v. | ) | ORDER GRANTING SUMMARY JUDGMENT |
| MR. STOCKWELL, J. ROLLINS; POWELL, and MR. McDONALD, | ) | |
| Defendant. | ) | |

**BEFORE THE COURT** is Defendants' Motion for Summary Judgment, **ECF No. 106**, pursuant to Federal Rule of Civil Procedure 56. Plaintiff is a prisoner at Airway Heights Correctional Facility (AHCC) in Airway Heights, WA, and proceeds pro se. Assistant Attorney General Jason D. Brown represents defendants. The parties consented to the Magistrate Judge's jurisdiction, ECF No. 37.

Plaintiff alleges that his 8th and 14th Amendment rights have been violated by defendants, in that they misclassified him upon his entry into custody at AHCC, and that they failed to protect him from assault by another inmate, ECF No. 24. He requests monetary damages of $2,500,000 "or what the jury or courts feels [*sic*] is adequate," ECF No. 24-1; punitive damages of $1,750,000 "or what the jury our courts feels [*sic*] is adequate," *Id*; and nominal damages of "what the jury or court feels is just." *Id*.

Defendants respond with a Motion for Summary Judgment, asking the Court to dismiss plaintiff's claims on the following grounds: (1) plaintiff's 14th Amendment claims are preempted by his 8th Amendment claims; (2) plaintiff's constitutionally protected rights were not violated, because there is no constitutionally protected right of classification, and the 8th Amendment does not require prison officials to protect inmates from all assaults; and (3) all defendants are protected from suit by qualified immunity, ECF No. 106.

Order Granting Summary Judgment - 1

**STATEMENT OF FACTS**

Troy Anthony Pesina (plaintiff) came into the custody of the Department of Corrections on July 28, 2010, ECF No. 111. A Classification Counselor conducted an initial classification of plaintiff on August 3, 2010, yielding a score consistent with medium custody, due in part to a federal detainer in the system. *Id*. Though the counselor recommended an override to minimum security, plaintiff was assigned to medium custody, in Unit N of AHCC, on August 5, 2010. *Id*. Plaintiff asserts that he "was never allowed to challenge the demotion of [his] custody," ECF No. 24. On August 9, 2010, he filed an offender complaint regarding his classification, ECF No. 111.

That same day, plaintiff also alleges that he spoke to his counselor, defendant McDonald, telling him that he had been "confronted by inmates" and that he would like to moved back to minimum security, ECF No. 24. Plaintiff states that he told McDonald "I'm having some issues with some of the fools right here," ECF No. 110, Exhibit A. Plaintiff states that McDonald told him to "'inform an officer.'" *Id*.  McDonald states that he does not recall plaintiff approaching him with any specific allegations of being threatened by other inmates, ECF No. 112.

On August 11, 2010, plaintiff alleges that he spoke to defendant Powell, a Correctional Officer at AHCC (which, as he states, he was instructed to do), regarding the same issue, ECF No. 24. Plaintiff states that he told Powell, "I'm having some problems with some of these guys here. I think a situation is going to arise," ECF No. 110, Exhibit A. He states that he informed her that there were "individuals who could become hostile towards [him]," and that he did not feel safe or comfortable, ECF No. 24. Powell states that she does not recall plaintiff approaching her with any specific allegations of being threatened by other inmates, ECF No. 113.

On August 12, 2010, plaintiff alleges that he spoke to defendant Rollins, a Classification Counselor at AHCC, regarding the same issue, ECF No. 24, stating "I'm having a situation with some of these people here," ECF No. 110, Exhibit A. Rollins states that he does not recall plaintiff approaching him about being threatened by other inmates, ECF No. 114.

Each of the above defendants states that if plaintiff had come to them with specific allegations that he was in danger, all inmates involved would have been placed in segregation while the matter was investigated, ECF No. 112; ECF No. 113; ECF No. 114. Each defendant

1    further states that neither plaintiff nor any other inmates were placed in segregation for

2    investigation into such allegations. *Id*.

3         On August 12, 2010, plaintiff sent a "kite," or written message, to defendant Stockwell, a

4    Corrections Unit Supervisor at AHCC, ECF No. 24, stating "I'm having some issues with inmates

5    housed in Medium. Don't think there will be a problem but would just like you to know ahead of

6    time," ECF No. 110, Exhibit A. Plaintiff states that after sending this kite, "[a]gain I was

7    confronted by inmates so again I kited [Stockwell] ... because when I had spoken to the counselors

8    and officer I received no help," ECF No. 24. This second kite read, "I don't feel comfortable in

9    this unit or med[ium] and feel there may be people here that could become hostile towards me and

10   would like to be put back in min[imum] unit." *Id*. However, defendant Stockwell states that he

11   was filling in for his supervisor in a different part of AHCC for the entire month of August, 2010,

12   and thus did not receive this kite, ECF No. 115.

13        Plaintiff alleges that on August 13, 2010, he was assaulted by other inmates at 8:15 and

14   8:30 P.M., ECF No. 24. A written response from the Washington Office of Financial

15   Management, Risk Management Division, regarding a tort claim filed by plaintiff regarding the

16   assault indicates that staff investigated the assault, ECF No. 13-3, as does defendant's

17   memorandum, ECF No. 108. No medical or infirmary records following the assault exist;

18   however, defendants do not deny that the assault occurred. *Id*.

19        While in segregation pending an investigation of the assault, he received a response to the

20   August 12, 2010 kite. *Id*.  The kite was written by defendant Rollins on behalf of defendant

21   Stockwell, who, as mentioned above, was working elsewhere in AHCC. *Id*. It states: "You have a

22   review scheduled in the next month or so. We will look at your custody and placement then. If you

23   don't feel comfortable talk to your counselor about any issues you have." *Id*. As of August 26,

24   2010, the federal detainer regarding plaintiff had been closed in the system, and a Classification

25   Counselor recommended plaintiff be moved to minimum security because of this, ECF No. 111.

26   On August 26, 2010, plaintiff was released from segregation and promoted to minimum custody.

27   *Id*.

28

Order Granting Summary Judgment - 3

Plaintiff has filed suit against defendants, alleging violations of his civil rights under 42 U.S.C. § 1983. The claimed violations are (1) the misclassification of his prisoner status which placed him in medium security from August 3 through August 26, 2010, a violation of his 8th and 14th Amendment rights; and (2) a failure to protect him from assault by fellow inmates, a violation of his 8th and 14th Amendment rights, ECF No. 24.

Defendants have moved for summary judgment, ECF No. 106. They request that the Court dismiss plaintiff's claims on the following grounds: (1) plaintiff's 14th Amendment claims are preempted by his 8th Amendment claims; (2) plaintiff's constitutionally protected rights were not violated, because there is no protected right of classification, and the 8th Amendment does not require prison officials to protect inmates from all assaults; and (3) all defendants are protected from suit by qualified immunity, ECF No. 108.

**STANDARD OF REVIEW**

**A. Summary Judgment Standard**

A party may be granted summary judgment when the moving party has shown that there is "no genuine dispute as to any material fact," and is therefore "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 allows the court to dispose of claims that are factually unsupported, and enter summary judgment against the party who has failed to sufficiently establish the existence of an essential element of his case, which he would bear the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). This is because a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-323.

"Material facts" are those that are "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). There is no "genuine dispute" regarding a material fact unless there is sufficient evidence for the jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court's inquiry at summary judgment is therefore whether a reasonable jury could find by the preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.* at 252. This requires the evidence necessary

for a jury to reasonably find for the nonmoving party; not simply a "scintilla" of evidence supporting the position of the nonmoving party. *Id.* at 252.

Both parties must support their positions by citing to the record or other materials, including depositions, affidavits, declarations, and interrogatory answers, or by showing that the opposing party and/or the cited materials have not or are unable to "establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56 (c)(1). The inferences drawn from the underlying facts of the case are "viewed in the light most favorable" to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). When the moving party meets its initial burden of showing that there is no "genuine dispute," the nonmoving party must show there is some genuine dispute for trial. *Anderson,* 477 U.S. at 250. Submitting conclusory allegations in an affidavit is not sufficient to defeat summary judgment; for instance, the Court held insufficient a plaintiff's allegation of a conspiracy without "any significant probative evidence tending to support the complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *Anderson,* 477 U.S. at 249. The nonmoving party must produce "at least some significant probative evidence tending to support the complaint." *T.W. Elec. Serv., Inc*., 809 F.2d at 630.

When the nonmoving party has not carried his burden of proof by making a "sufficient showing" on an "essential element" of his case, the moving party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323. However, if the evidence is such that a "rational trier of fact *might* resolve the issue in favor of the nonmoving party," the court must deny summary judgment. *T.W. Elec. Serv., Inc.*, 809 F.2d at 631 (emphasis added).

**B. Claims Under 42 U.S.C. § 1983**

In order to successfully state a claim under 42 U.S.C. § 1983, the plaintiff must show that a person, acting under color of law, violated a clearly recognized constitutional or federal right. *Williams v. Field,* 416 F.2d 483, 484 (9th Cir. 1969). Such a person may only be exempt from suit if it is found that he did not violate a "'clearly established' constitutional right 'of which a reasonable person would have known.'" *Foster v. Runnels*, 554 F.3d 807, 815 (9th Cit. 2009), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "If the

1   law does not put the officer on notice that his conduct would be clearly unlawful," then summary

2   judgment is appropriate. *Foster*, 554 F.3d at 815.

3        A deprivation occurs via a defendant's affirmative act, participation in another's

4   affirmative act, or an omission to do something he was legally required to do. *Leer v. Murphy*, 844

5   F.2d 628, 633 (9th Cir. 1988). Each defendant's act or omission must be analyzed individually to

6   determine whether his specific act resulted in a deprivation of plaintiff's constitutional rights. *Id.*

7   at 634. "Sweeping conclusory allegations will not suffice to prevent summary judgment. ... The

8   prisoner must set forth specific facts as to each individual defendant's deliberate indifference." *Id.*

9   **C. Qualified Immunity**

10       The Supreme Court has held that "government officials performing discretionary functions

11  generally are shielded from liability for civil damages insofar as their conduct does not violate

12  clearly established statutory or constitutional rights of which a reasonable person would have

13  known." *Harlow*, 457 U.S. at 818. This shielding is known as qualified immunity, and is an

14  affirmative defense. *Id*. "[T]he qualified immunity standard 'gives ample room for mistaken

15  judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'

16  " *Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir. 2003)(citations omitted).

17       There exists a two-part test to determine whether such immunity applies. *Foster*, 554 F.3d

18  at 812. The first question must always be whether an official's conduct violated a constitutional

19  right. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); *cf. Pearson v. Callahan*, 555

20  U.S. 223, 129 S.Ct. 808 (2009). If it did not, qualified immunity should be granted.  *Foster*, 554

21  F.3d at 812. If a violation has been shown, the second question becomes "whether the violated

22  right was clearly established." *Id*. A third question has also been considered: "... whether the

23  officer could have believed, reasonably but mistakenly ... that his or her conduct did not violate a

24  clearly established constitutional right."*Skoog v. County of Clackamas*, 469 F.3d 1221, 1229 (9th

25  Cir. 2006); *but see Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007) (third prong considered

26  instructive but not determinative).

27       The *Harlow* court held that, for such a right to be "clearly established," the official "knew

28  or reasonably should have known that the action he took within his sphere of official

responsibility would violate the constitutional rights of the plaintiff, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury." *Harlow*, 457 U.S. at 815. A clearly-established right exists if "in the light of pre-existing law the unlawfulness [is] apparent." *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034). "[I]f officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *see Coady v. Steil,* 187 F.3d 727, 734 (7th Cir.1999).

## DISCUSSION

### A. Claim of Violation of Constitutional Right to Prisoner Classification Status

The Supreme Court has routinely held that federal prisoners do not have a constitutionally protected right to classification status pursuant to the 14th Amendment. *See, e.g. Camarena v. Adams*, 11 Fed.Appx. 789, 790 (9th Cir. 2001); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). The 8th Amendment similarly provides no such protection, since "the mere act of classification does not amount to an infliction of pain." *Myron v. Terhune*, 476 F.3d 716, 719 (9th Cir. 2007). The Ninth Circuit applied this to Washington state prisoners, holding that they too have no constitutional right to classification status. *See Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987).

Here, plaintiff has no claim to a violation of a constitutional right to prisoner classification status, since case law has held that no such right exists under either the 8th or 14th Amendment. Higher courts have determined that neither the 8th nor the 14th Amendment condemns or controls prisoner classification status. Therefore, plaintiff has not demonstrated a deprivation of a constitutional right giving rise to a 42 U.S.C. § 1983 claim regarding his prisoner classification status, via either the 8th or the 14th Amendment. As such, summary judgment for these claims is proper.

### B. Claim of Violation of Constitutional Right to Protection from Assault

The 8th Amendment of the United States Constitution prohibits the infliction of "cruel and unusual" punishment. *See, e.g., Ingraham v. Wright*, 430 U.S. 651, 664-68, 97 S.Ct. 1401,

1  1408-11, 51 L.Ed.2d 711 (1977); *Haygood v. Younger*, 769 F.2d 1350, 1354-55 (9th Cir.1985).

2  "[The] Eighth Amendment, which is specifically concerned with the unnecessary and wanton

3  infliction of pain in penal institutions, serves as the primary source of substantive protection to

4  convicted prisoners ... ." *Whitley v. Albers*, 475 U.S. 312, 327, 106 S. Ct. 1078, 1088, 89 L. Ed. 2d

5  251 (1986). Additionally, "a substantive due process claim will be preempted if the asserted

6  substantive right can be vindicated under a different – and more precise – constitutional rubric."

7  *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir.

8  2007). As such, the 8th Amendment is the proper guideline for determining whether plaintiff's

9  right to be protected from assault by another inmate was violated.

10  The Court therefore finds defendants' assertion that plaintiff's 14th Amendment claim

11  regarding protection from assault is preempted by his 8th Amendment claim to be correct. The 8th

12  Amendment is the most specific constitutional guideline given for protection of those convicted of

13  crimes and imprisoned, and that Amendment shall guide the Court's analysis. Therefore,

14  defendant's motion for summary judgment on plaintiff's 14th Amendment claim is granted, and the

15  Court considers only plaintiff's 8th Amendment claim.

16  "[T]he treatment a prisoner receives in prison and the conditions under which he is

17  confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25,

18  31, 113 S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993). If a prison official shows "deliberate

19  indifference" to an inmate's health or safety, he will be in violation of this amendment. *Farmer v.

20  Brennan*, 511 U.S. 824, 834, 114 S.Ct. 1970 (1994). "Deliberate indifference" requires more than

21  ordinary lack of due care for an inmate's safety. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct.

22  1078, 1084, 89 L.Ed.2d 251 (1986). It can be equated to recklessly disregarding a known risk of

23  serious harm to an inmate. *Farmer*, 511 U.S. at 836. "[The] official must both be aware of facts

24  from which the inference could be drawn that a substantial risk of serious harm exists, and he must

25  also draw the inference." *Id.* at 837.

26  "The deliberate indifference standard requires a finding of some degree of  individual

27  culpability, but does not require an express intent to punish. ... The standard does not require that

28  the guard or official 'believe to a moral certainty that one inmate intends to attack another at a

given place at a time certain before that officer is obligated to take steps to prevent such an assault. But, on the other hand, he must have more than a mere suspicion that an attack will occur.'" *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (citations omitted). The standard of knowing for "deliberate indifference," then, is one above mere suspicion, but below absolute certainty or intent to inflict harm.

However, *Berg* acknowledges the inherent difficulty in administering a prison while maintaining the safety of its inmates, noting that, "in deciding how to protect a prisoner, officials may face a number of choices, each posing potential dangers to the prisoner and others. Choosing the optimal 'prophylactic or preventive measures' to prevent violence and maintain safety is difficult and not readily susceptible to judicial evaluation." *Id*. at 461 (citations omitted).

Here, we consider separately plaintiff's claims that defendants Rollins, McDonald, Stockwell, and Powell violated plaintiff's 8th Amendment rights by displaying "deliberate indifference" to plaintiff's safety regarding his allegations that he was going to be assaulted by another inmate.

### i. Defendant Rollins

Defendant Rollins asserts that he has no recollection of plaintiff coming to him with specific allegations of an impending assault, ECF No. 114, whereas plaintiff stated that he told Rollins, "I'm having a situation with some of these people right here," ECF No. 110, Exhibit A. Viewed in the light most favorable to the nonmoving party – here, plaintiff – Rollins could not have been expected to know that plaintiff was in danger of an impending assault, based upon what plaintiff verbally told him.

Additionally, because Rollins responded to plaintiff's "kites" (originally intended for Stockwell), we must also consider whether Rollins displayed "deliberate indifference" in reading these kites and not assisting plaintiff. The first kite stated that plaintiff "[did not] think there will be a problem," ECF No. 110, Exhibit A, while the second said that plaintiff did not feel comfortable and wished to be moved. *Id*. Neither of these would have given Rollins more than a "mere suspicion" of an impending assault on plaintiff – the first is vague and, in fact, suggests that an assault is probably *not* forthcoming; the second, while slightly more alarming, merely states

discomfort and a desire for transfer. Neither would reasonably put Rollins on notice that an assault was impending. As such, the Court cannot find that Rollins showed "deliberate indifference" to plaintiff's safety. There is no disputed issue of material fact relevant to this claim, and summary judgment for this claim is proper.

### ii. Defendant McDonald

Defendant McDonald similarly asserts that he has no recollection of plaintiff coming to him with specific allegations of an impending assault, ECF No. 112. Plaintiff asserts that he told McDonald "I'm having some issues with some of the fools right here," ECF No. 110, Exhibit A. Viewed in the light most favorable to plaintiff, McDonald could not have been expected to know that plaintiff was in danger of an impending assault. Again, because of the vagueness of his statement to McDonald and lack of a specific allegation that he feared harm, plaintiff has not demonstrated that McDonald demonstrated "deliberate indifference" to his safety. As such, there exists no disputed issue of material fact pursuant to this claim, and summary judgment is proper.

### iii. Defendant Stockwell

Defendant Stockwell asserts that he was not working in Unit N during August 2010, ECF No. 115, and thus infers that he did not receive the aforementioned kites sent by plaintiff. *Id*. Had Stockwell received and read these kites, the Court would consider whether they put him on notice of an impending assault. However, since Stockwell has stated that he was not working in Unit N when these kites were sent, plaintiff has not shown that Stockwell knew about an impending assault and deliberately disregarded this knowledge. There is no evidence that Stockwell violated plaintiff's constitutional right or knowingly participated in another's violation. As such, there is no disputed issue of material fact, and summary judgment for this claim is appropriate.

### iv. Defendant Powell

Defendant Powell asserts that she has no recollection of plaintiff providing any specific allegations of an impending assault, ECF No. 113. Plaintiff asserts that he was directed to speak with Powell by McDonald about his concerns regarding issues with other inmates, ECF No. 24. Plaintiff states that he told Powell, "I'm having problems with some of these guys here. I think a situation is going to arise," ECF No. 110, Exhibit A. He states further that he told Powell there

Order Granting Summary Judgment - 10

were "individuals who could become hostile towards [him]," and that he "did not feel safe or comfortable," ECF No. 24. Lastly, he states that, after speaking with her, Powell told him to again speak to his counselor. *Id.*

In reading both plaintiff's February 2011 deposition and June 2011 complaint, the Court finds that the later testimony supplemented the earlier, and that the two are not inconsistent. Thus, the Court deems it proper to consider both. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). The Court finds that plaintiff, in telling Powell that other inmates could become hostile toward him, that he believed a "situation [was] going to arise," and that he did not "feel safe or comfortable," did not put her on sufficient notice of an impending assault such that she displayed "deliberate indifference" toward his safety. The Court finds that, while Powell may have had a "mere suspicion" of some future possible harm, her knowledge did not rise beyond this level to one of a "substantial risk of serious harm." Plaintiff's allegations weren't sufficiently specific such that Powell failing to assist him showed "deliberate indifference" to his safety. Therefore, there exists no genuine disputed issue of material fact, and summary judgment is appropriate.

However, even if Powell had showed "deliberate indifference" to plaintiff's safety and his 8th Amendment rights were violated, the Court finds that Powell's request for qualified immunity would have nevertheless been granted.

Pursuant to the *Foster* two-part test to determine whether qualified immunity is appropriate, the Court asks (1) whether a constitutional right was violated; and (2) whether the violated right was clearly established. Regarding the first step, as mentioned, the Court finds no violation, but assumes one for the sake of argument. Next, it considers whether the right was "clearly established," such that Powell either knew or should have known that her failure to assist plaintiff would violate his constitutional rights. The Court finds that plaintiff's right to be protected from possible assault and a feeling of unsafeness was not so clearly established that Powell would have unequivocally known her conduct was unlawful. The *Malley* test – where, if reasonably capable officers would disagree as to whether discretionary conduct was unlawful, immunity must be granted – is particularly instructive. The Court does not believe that Powell's

conduct was so egregiously unlawful that no other reasonably capable officer in her position would have done the same thing.

Therefore, even if plaintiff had demonstrated a violation of his 8th Amendment rights, Powell would not be subject to suit by virtue of qualified immunity.

**CONCLUSION**

Defendants have moved for summary judgment against plaintiff's claims that his 8th and 14th Amendment rights were violated, in that defendants misclassified him upon entry to AHCC, and that they failed to protect him from assault by another inmate. In considering the facts in the light most favorable to plaintiff, the Court finds no genuine disputed issue of material fact exists and defendants are entitled to summary judgment on all of plaintiff's claims against them as a matter of law.

Accordingly,

**IT IS ORDERED:**

Defendants' Motion for Summary Judgment, **ECF No. 106**, is **GRANTED** on all claims.

**IT IS FURTHER ORDERED**:

**The complaint is dismissed with prejudice.**

The District Court Executive is directed to file this Order, provide copies to the parties, enter judgment in favor of defendants, and **CLOSE** this file.

DATED this 25th day of June, 2012.

 s/ James P. Hutton     
JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

Order Granting Summary Judgment - 12